PEOPLE ex rel. ROSE v. JACOBS et al., Assessors.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

TAXATION—ASSESSMENT—TAX DISTRICTS—EVIDENCE.

On certiorari to review assessment of lands, evidence held to show that certain lots were not lands adjacent to and occupied and connected with relator's dwelling house, within the meaning of Laws 1896, p. 801, c. 908 (Tax Law) § 10, as amended by Laws 1898, p. 1277, c. 537, Laws 1902, p. 504, c. 200, and Laws 1903, p. 641, c. 305, declaring that, if the boundary line of a tax district passes through a building any portion of which is used as a dwelling, the owner may elect in which district such building, "and the adjacent land owned, occupied, and connected therewith," shall be assessed.

Appeal from Special Term, Rensselaer County.

Certiorari by the people, on the relation of George C. Rose, against Jacob V. Jacobs and others, assessors of the city of Troy, to review an assessment of lands. From an order confirming a report of a referee and dismissing the writ, relator appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Chester G. Wager (John B. Holmes, of counsel), for relator.
John T. Norton, for respondents.

CHASE, J. The relator in the year 1877 purchased a farm of about 70 acres in the town of Brunswick, Rensselaer county. The farm was near the city of Troy, and situated between Pine Woods avenue on the north and Spring avenue on the south. The dwelling house on the farm faces Pine Woods avenue. In 1898 the relator opened a street across his real property connecting said avenues, which street runs west of his dwelling house, and is called "Central Avenue." The relator dedicated this street to, and it was accepted by, the town of Brunswick. The relator then had a part of his farm, including that portion thereof west of Central avenue, surveyed and laid out into blocks by streets, some of which connected with streets of the city of Troy. The blocks of land were numbered by letters and subdivided into lots, which were also numbered. He called the lands so surveyed and laid out "Rosedale Heights," and he filed a map thereof in the office of the clerk of the county of Rensselaer on the 6th day of May, 1899. By chapter 665, p. 1463, of the Laws of 1900, the boundaries of the city of Troy

were enlarged. The eastern boundary line of the city as so enlarged was run by the city engineer, and as so run by him it crossed the relator's real property west of the relator's dwelling house. A question arose as to the true bearing of the line, and a further survey was made in the fall of 1900 and the early winter of 1901, and the line as then surveyed passed a few feet east of the defendant's dwelling house. Chapter 335, p. 923, of the Laws of 1901, confirmed the line as last run. During the winter of 1901 the relator built a one-story wooden addition on the east side of his house, which addition stood on pillars. Such addition was completed about April 1, 1901, and the dwelling house with such addition, exclusive of a porch connected therewith, extends about seven feet east of the city line, and by reason thereof the relator claims that he can elect, pursuant to section 10 of the tax law (chapter 908, p. 801, Laws 1896, as amended by chapter 537, p. 1277, Laws 1898, chapter 200, p. 504, Laws 1902, and chapter 305, p. 641, Laws 1903), in which tax district his dwelling house, and the adjacent land owned, occupied, and connected therewith, shall be assessed.

The lots so surveyed and laid out which lie west of Central avenue were assessed in the city of Troy for the year 1901, and the tax upon such assessment was paid by the relator. On the 19th day of May, 1901, the relator served upon the defendants and upon the assessors of the town of Brunswick a notice, in which he stated that he was the owner of a farm with a house and buildings thereon, situated partly in the city of Troy and partly in the town of Brunswick, and that the boundary line passed through his dwelling house, and that he elected, pursuant to the provisions of section 10 of the tax law, that his lands and the buildings thereon should be assessed in the tax district of the town of Brunswick, and not in the tax district of the city of Troy. The defendants thereafter, and during the last of the month of May or first of the month of June, personally examined the property and ascertained the facts relating thereto. They found that the lands in question were wholly separated from the lands upon which the relator's dwelling house is situated by said Central avenue, and that the streets, blocks of land, and lots therein were shown by stakes driven in the ground, on which were signs giving the names of the streets and the numbers of the blocks and lots; that said lots were covered with grass, but were not then otherwise cultivated, and could not be, without disturbing such stakes and signs; that on said plot of ground was a small building with a piazza in front, on which was a sign containing the word "Office," and which building was used as the headquarters for the sale of the lots in "Rosedale Heights"; that three or more of the lots had been sold, and that on two or more of such lots dwellings had been erected. One or more of the streets so laid out were used to reach the lots so sold. The assessors of the town of Brunswick did not assess the lands of the relator lying west of Central avenue, but the assessors of the city of Troy determined that said lands lying west of Central avenue, all of which are within the boundaries of the city of Troy, were not lands adjacent to and occupied and connected with the dwelling house of the relator, within the mean-

ing of said section 10 of the tax law, and assessed said lots by lot and block numbers as laid down on said map and upon said plot of ground. The aggregate amount of their assessment of said lots was $2,825. A writ of certiorari was obtained to review the action of said assessors on the ground that their assessment of said lots was illegal by reason 'of the alleged fact that under said section 10 of the tax law said lots could only be assessed in the town of Brunswick. After a return to said writ the court found it necessary to take testimony relating thereto, and referred the matter to a referee to take the testimony and report the same to the court with his findings of fact and conclusions of law, and the testimony was so taken by said referee, and he reported to the court that said lots were not lands, adjacent to and occupied and connected with the dwelling house of the relator, within the meaning of said section 10 of the tax law, and as a conclusion of law found that the writ of certiorari should be dismissed. The court confirmed said report, finding, and conclusion, and dismissed the writ, from which order this appeal is taken.

The relator has, by all means within his power, obtained whatever advantage, if any, there may be in the fact that said lands are within the city limits and within a short distance of the thickly populated part thereof. He has continued city streets therein, and to some extent actually divided the lands by the sale of lots, and he has substantially destroyed the value of said lands for general farm purposes so long as they are maintained in their present condition. There is before us the finding of the assessors, as well as the referee and the court, that said lots were not lands adjacent to and occupied and connected with the dwelling house of the relator, within the meaning of the tax law, and we cannot say that such finding is against the weight of evidence herein.

The order should be affirmed, with $10 costs and disbursements. All concur.